EDMUND A. SAUNDERS et al., Respondents, *v.* BERNARD
REILLY, late Sheriff, etc., Appellant.

A mere general creditor of a firm, having no execution or attachment,
has no lien whatever upon its personal assets.

While firm creditors are entitled to a preference over creditors of the
individual members of the firm in the payment of their debts out of
the assets of the firm in course of liquidation, their equity is not held
or enforceable in their own right, but is a derivative one, practically a
subrogation to the equity of each individual partner to have the firm
assets applied primarily to the payment of its debts; and where no such
equity exists in favor of any member of the firm, the firm creditors
have none.

Where, therefore, judgment is recovered against all the members of a
firm upon a joint obligation, not an indebtedness of the firm, the firm
property may be levied upon and sold on execution issued on the judg-
ment; and after such sale no rights, legal or equitable, in such property
are left to the firm creditors, but the purchaser acquires full title although
the firm be insolvent.

Plaintiffs recovered a judgment against the members of the firm of T. &
I., upon a firm debt, upon which execution was issued to the sheriff.
The defendants in that action were also copartners with others in the
firm of T. A. & Co. After the delivery of the execution to the sheriff
another execution against the members of the latter firm, issued on a
judgment recovered for a firm debt, was delivered to the sheriff, who, by
virtue of both executions, levied upon property of the firm of T. & I.
Plaintiffs had at the time other claims against T. &·I., not then in
judgment. They notified the sheriff, that, as creditors of the firm, they
claimed the application of its property to the payment of its debts and
forbade any sale of the property on the execution against T. A. & Co.
The sheriff, however, after selling sufficient of the property, levied on
to satisfy the execution against T. & I , proceeded to sell the residue
on the other execution, announcing that he sold the right, title and
interest of T. & I., or either of them, in the property. Plaintiff subse-
quently recovered another judgment, upon a firm debt, against T. & I.;
execution whereon was issued to the sheriff and returned by him
unsatisfied. In an action against the sheriff for a false return, it
appeared that property sold on the execution against the members of
the firm of T. A. & Co., sufficient to satisfy the last execution, was
still accessible to the sheriff. *Held*, that defendant was authorized in
making the levy and selling under the execution against T. A. & Co.
(Code of Civil Pro. § 1369); that T. & I., were, as between themselves,
jointly liable for the debts of T. A. & Co., and so neither could com-
plain that their joint property had been taken, and therefore no equity

existed in favor of the creditors of their firm ; that it was not material that the sheriff sold the right, title and interest of T. & I., or either of them; that he thereby sold and gave good title to the whole interest and had no right to seize and sell again any portion of the property on plaintiff's execution; and, therefore, his return was not false.

(Argued February 4, 1887 ; decided March 8, 1887.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 4, 1885, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the trial court.

The nature of the action and the material facts are stated in the opinion.

*Henry Thompson* for appellant. The only creditor a sheriff, armed with process, under which he is about to sell property, can regard is a judgment creditor or attachment creditor. (*Greenwood* v. *Brodhead*, 8 Barb. 596, 597 ; Crock. on Sher. § 451 ; Free. on Exec. § 110 ; *Handy* v. *Dobbins*, 12 Johns. 220.) Under an execution which ran against both the firm property and the individual property of those summoned, which included Tooker & Irwin, the defendant might satisfy his writ out of the joint property of all, or the separate property of any one or more. (Story on Part. [7th ed.] § 260 ; *Ex parte Ruffin*, 6 Ves. 119, 126 ; 1 Lind. on Part. 515 ; *Foster* v. *Barnes*, 81 Penn. St. 377 ; *Randolph* v. *Daly*, 16 N. J. Eq. 313 ; *Jones* v. *Clayton*, 4 M. & S. 349 ; Coll. on Part. [5th Am. ed.] 818 ; *Harris* v. *Jamieson*, 5 T. R. 556 ; *Abbott* v. *Smith*, 2 W. Bl. 947 ; Code of Civ. Pro. § 1935.) The levy having been rightfully made upon the property of William T. Tooker and Thomas J. Irwin, the sale of February seventh was right and proper and the purchasers thereat obtained the whole title of the judgment debtors, Tooker & Irwin, and rightfully took possession of their purchases. (Free. on Exec. § 115 ; Crock. on Sher. §§ 490, 491 ; *Catlin* v. *Jackson ex dem. Gratz*, 8 Johns. 520; *Menagh* v. *Whitwell*, 52 N. Y. 146; *Hull* v. *Carnley*, 1 Kern. 501, 507.) The partners of a firm may transfer *bona fide* their property to a

purchaser for value, and the purchaser takes it free from any lien of the firm's debts. (*Stanton* v. *Westover*, 101 N. Y. 265, 267; *Dimon* v. *Hazard*, 32 id. 65; *Sage* v. *Chollar*, 21 Barb. 698; *Reed* v. *McLanahan*, 47 N. Y. Sup. 277; *Loeschigk* v. *Addison*, 3 Robt. 344; *Field* v. *Hunt*, 21 How. 463; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 46; *Corey* v. *Long*, 2 Sweeney, 495; *Smith* v. *Howard*, 20 How. 121.) Exercise of dominion over firm property by some member of the firm, in order to subject it to execution at the suit of a firm creditor is indispensable. (*Fitzpatrick* v. *Flanagan*, 106 U. S. 648, 654; *Case* v. *Beauregard*, 99 id. 119; *S. C.* 101 id. 688; *Menagh* v. *Whitwell*, 52 N. Y. 146; *Dover* v. *Stauffer*, 1 Pen. & Watts [Pa.] 198; *Coover's Appeal*, 29 Penn. St. 9; *Rice* v. *Bernard*, 20 Vt. 479; *Appeal of York Co. Bk.* 32 Penn. St. 446.) Possession was rightfully taken by the purchasers of the property sold February 7, 1879. (*Phillips* v. *Cook*, 24 Wend. 389; *Schrugam* v. *Carter*, 12 id. 131; *Walsh* v. *Adams*, 3 Den. 125; *Waddell* v. *Cook*, 2 Hill, 47; *Berry* v. *Kelly*, 4 Robt. 106; *Smith* v. *Orsen*, 42 N. Y. 132; *Atkins* v. *Laxton*, 77 id. 115; *Reed* v. *McLanahan*, 47 N. Y. Supr. Ct. 277; *Staats* v. *Bristow*, 73 N. Y. 264.) The purchasers having rightfully taken the property away, and plaintiffs not then having an execution, they not only cannot complain of the removal, but before recovery in this action they were bound to show that prop- of the judgment debtors was within defendant's bailiwick, of which he had or might have had notice when their execution went into his hands. (*Watson* v. *Brennan*, 66 N. Y. 621; *Wehle* v. *Conner*, 69 id. 550.) Plaintiffs' case can derive no benefit from the fact that the building—their interest in which was sold for $100—still remained in existence February eighteenth, and the safe which was sold for $27 had not been removed. (Wash. on Real Prop. [4th ed.] 148; *Merry Wives of Windsor*, act 2, scene 2; *Pike* v. *Butler*, 4 N. Y. 360.) The party in whose favor process issues may give instructions to the sheriff such as will not only excuse him from his general duty, but bind him. (*Root* v. *Wagner*, 30 N. Y. 9, 17;

*Mickies* v. *Hart*, 1 Den. 548; *Gorham* v. *Gale*, 7 Cow. 739; *Swaine* v. *Seaman*, 9 Wall. 254, 275; *Swinem* v. *Swart*, 4 Lans. 267; *Thompson* v. *Blanchard*, 4 N. Y. 303, 309.)

*George H. Forster* for respondents.   The second paragraph of the answer is bad, because it is neither a general denial nor a specific denial within the meaning of section 500 of the Code.   (*McEnroe* v. *Decker*, 58 How. 250; *Swin-burne* v. *Stockwell*, id. 312; *Hammond* v. *Earle*, 5 Abb. [N. C.] 105; *Miller* v. *McCloskey*, 9 id. 303; *People* v. *Snyder*, 41 id. 400; *People* v. *Nor. R. R. Co.* 53 Barb. 101.)   As there was property more than sufficient to pay in full the judgment, at the time of the issue of the execution, on the premises which had been occupied by Tooker & Irwin, individually, had been sold under a judgment against another firm, the fact that the right, title and interest of Tooker & Irwin, in which, with Candee & Arnold, they were partners, did not prevent the sheriff from making this execution out of the property.   (*Menagh* v. *Whitwell*, 52 N. Y. 147, 154, 193; *Wilder* v. *Keeler*, 3 Paige, 168; *Payne* v. *Mathews*, 6 id. 19; *Kerby* v. *Schoonmaker*, 3 Barb. Ch. 47; *Ganson* v. *Lathrop*, 25 id. 455; *Wilson & Gibbs* v. *Conine*, 2 Johns. 280.) .

EARL, J.   This action was brought by the plaintiffs against the defendant, late sheriff of the city and county of New York, to recover damages against him for making a false return to an execution issued upon a judgment recovered by the plaintiffs against William T. Tooker and Thomas J. Irwin, who were partners under the firm name of Tooker & Irwin.   The action was put at issue by the answer of the defendant, and brought to trial at a Circuit Court, and the trial judge, after the close of the evidence, directed a verdict for the plaintiffs.   The defendant appealed from the judgment entered upon that verdict to the General Term and from affirmance there to this court.

The material facts are as follows: In January and February, 1879, William T. Tooker and Thomas J. Irwin were

partners under the firm name of Tooker & Irwin, carrying on business in the city of New York. At the same time Tooker & Irwin, together with Julius A. Candee and Daniel Webster Arnold, were partners under the firm name of Tooker, Arnold & Co., also carrying on business in the city of New York. In the latter firm Arnold's share was three-twelfths, Candee's share four-twelfths and Tooker and Irwin's share jointly, five-twelfths. On the 16th day of January, 1879, these plaintiffs recovered a judgment against Tooker & Irwin for upwards of $800, and early on the next day they issued and placed in the hands of the sheriff an execution on that judgment. Later on the same day, Jane Irwin issued an execution to the sheriff on a judgment recovered by her for upwards of $7,000 against the firm of Tooker, Arnold & Co. The sheriff, under these executions, levied on the personal property of Tooker & Irwin, and advertised the same for sale. These plaintiffs then having a further claim for goods sold to the firm of Tooker & Irwin, which was not then in judgment, gave notice to the sheriff, on January twenty-third, that as creditors of the firm of Tooker & Irwin, they claimed the application of the firm property to the payment of the firm debts, and they forbade any sale of the assets of the firm under the execution issued by Jane Irwin on her judgment against Tooker, Arnold & Co. On February seventh the sheriff, after selling enough of the firm-property to satisfy the executions then in his hands against the firm of Tooker & Irwin, proceeded to sell the balance of the property on the execution in his hands in favor of Jane Irwin. In making that part of the sale he announced that he sold the right, title and interest of Tooker & Irwin, or either of them, in the property. On the 17th day of February, 1879, the plaintiff recovered judgment against the firm of Tooker & Irwin on their second claim against that firm, which was duly docketed and execution thereon issued on the same day to the sheriff. At the same time their attorney wrote to the sheriff that they required him, under that execution, to levy on any of the assets of the firm of Tooker & Irwin of which he had only

sold the interest of William T. Tooker, individually, and Thomas J. Irwin, individually, under the execution issued by Jane Irwin, and that if he had sold under the execution issued to him by Jane Irwin any of the assets of the firm, notwithstanding the notice which the plaintiffs had given him, then they required him to apply the proceeds of such sale to their execution. That execution he returned unsatisfied ; and that is the return which the plaintiffs complain of as false.

The property sold on the execution issued by Jane Irwin, or some of it, was still accessible to the defendant and ample to satisfy the plaintiffs' last execution if the defendant had the right and was bound to seize it notwithstanding the prior sale.

The claim of the plaintiffs, which has been sustained by the court below, is that the sale upon the execution issued upon the judgment of Jane Irwin simply operated as a sale of the separate interests of Tooker & Irwin in the firm property, and not as a sale of the *corpus* of the firm property ; and thus no greater effect was given to the sale than if it had been made by virtue of two executions upon judgments separately recovered against Tooker and against Irwin.

The decision below was based upon the authority of *Menagh* v. *Whitwell* (52 N. Y. 146). But we are of opinion that that case cannot properly be invoked as an authority for the decision made below, and that the principle there decided was misapplied by the learned court.

A mere general creditor of a firm having no execution or attachment has no lien whatever upon the personal assets of the firm. But when a firm becomes insolvent, and thus it becomes necessary to administer its affairs in insolvency or in a court of equity, then the rule is well settled that firm property must be devoted to firm debts and individual property to the payment of the individual debts of the members of the firm. If one member of a firm conveys to a person, not a member of the firm, all his interest in the firm property, the purchaser takes no part of the *corpus* of the firm property, but only such interest as remains after the equities between the partners have been adjusted and the firm debts have been

paid and satisfied. So, too, it was decided by the case above cited that if all the members of a firm should severally convey to different persons each his interest in the firm property, the persons so purchasing would not take any of the *corpus* of the firm property, but only the interest of each partner after the firm debts were paid, and the equities between the partners adjusted. It is also settled that it would be a fraud upon firm creditors for a member of a firm to take firm property and apply it upon his individual debts, or for the firm to take firm property and apply it upon the individual debts of any member of the firm. (*Ransom* v. *Van Deventer*, 41 Barb. 307; *Wilson* v. *Robertson*, 21 N. Y. 587.) But one of two partners may transfer all of his interest in the partnership property to his copartner, and the purchasing partner will be vested with the absolute title to the *corpus* of all of the partnership property, as if it had always belonged to him. (*Stanton* v. *Westover*, 101 N. Y. 265.) And all the members of a firm may sell the partnership property, even if wholly insolvent, to a purchaser in good faith, and thus convey, free from the claim of firm creditors, a good title to the firm property. Instead of selling for cash they may transfer firm property to pay a firm debt. And they may transfer the firm property to pay a joint debt for which they are jointly liable outside of the business of the firm, and the joint creditor will obtain a good title to the firm property. Therefore, while firm property will not pass under successive sales upon executions issued against the individual partners, we can see no reason to doubt that such property will pass under a sale upon a joint execution against all the partners, issued upon a judgment recovered for any joint debt whatever.

Upon the facts of this case it is entirely clear that Tooker & Irwin could have taken their firm property and applied it upon this joint judgment against them; and, inasmuch as they had the power and right to do that, they could have turned it out to the sheriff when he came with the joint execution against them; and as they could have turned it out upon the

debt before judgment, or upon the execution after judgment there can be no reason to doubt that the sheriff could take and sell it upon the execution free from the claim of their firm creditors. After this sale of the firm property upon a joint judgment against both members of the firm, no equity was left in either member of the firm to have the property thereafter applied in discharge of the firm debts. Having been applied in discharge of the joint debt against both members of the firm, all the equities of both members in the property, as against each other, were wiped out; and it is only through the equity which one member of a firm has in the firm property or against his copartners that firm creditors, on the principal of subrogation, can enforce their claims against the firm property. And so, in effect, it was held in the case of *Menagh* v. *Whitwell*, and *Stanton* v. *Westover*, (*supra*). In 3 Kent's Commentaries, 65, it is said that "creditors have no lien upon the partnership effects for their debts. Their equity is the equity of the partners operating to the payment of the partnership debts." In *Kirby* v. *Schoonmaker*, (3 Barb. Ch. 46) it was said by the chancellor: "The copartners, however, have certain equitable rights between themselves, arising out of the copartnership by which either can compel the other to have all the effects of the firm applied in the first place to the payment of the debts due from them as copartners. And this, as is said in the books, gives the joint creditors a *quasi* equitable lien upon the property of the firm, to be worked out through the medium of the equity of the copartners as between themselves, and with their assent; or, at least, with the assent of one of them." In *Case* v. *Beauregard* (99 U. S. 119) Mr. Justice STRONG said: "No doubt the effects of a partnership belong to it so long as it continues in existence and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm, and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in

preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of the firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration."
In *Fitzpatrick* v. *Flannagan* (106 U. S. 648) Mr. Justice MATTHEWS said: "The legal right of a partnership creditor to subject the partnership property to the payment of his debt, consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution. His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to the creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains ; that is, so long as the partner himself retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity and enforce through it the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration."

Therefore, after the sale of the joint property upon a joint

judgment, although the judgment was not recovered upon a debt against the separate firm of Tooker & Irwin, there were no rights, legal or equitable, left to either member of the firm, in the property, and therefore no equity in the firm property to be worked out under them by any of the firm creditors.

The statute (Code, § 1369) requires the sheriff to satisfy an execution against property "out of the personal property of the judgment-debtor," and if sufficient personal property cannot be found, then out of the real property belonging to him. There is no statute or rule of law which requires the sheriff to satisfy a joint execution out of the joint property of the execution debtors, or out of the separate property of each debtor. He may satisfy such an execution out of the joint property, or out of the separate property of any one or more of the debtors. In 1 Lindley on Partnership, 515, it is said that, "although the writ of execution on a joint judgment must be joint in form, it may be levied upon all or any one or more of the persons named in it," and that "the consequence of this is, that the sheriff may execute a writ issued against several partners jointly, either on their joint property or on the separate property of any one or more of them, or both on their joint or their respective separate property. And so long as there is within the sheriff's bailiwick any property of the partners, or any of them, a return of *nulla bona* is improper." And these rules have now been embodied in section 1935 of the Code.

As between themselves Tooker & Irwin were jointly liable for the debts of Tooker, Arnold & Co., and neither can complain that their joint property has been taken to satisfy such joint liability.

The fact that the sheriff, when he made the sale of this property on the execution in favor of Jane Irwin, announced that he sold the right, title and interest of Tooker & Irwin or either of them, in the property, can make no difference. He sold all he had the right to sell by virtue of his execution and if he sold all the right, title and interest of Tooker &

Irwin in that property, he sold the whole of it, and gave good title to the purchaser. He, therefore, had no right to seize any of that property again and sell it by virtue of the plaintiffs' execution, and his return was not false.

The general denial contained in the defendant's answer put in issue the material allegations of the complaint, and was sufficient to authorize the defense asserted by the defendant.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

All concur, except Ruger, Ch. J., not voting; Andrews, J., concurring in result.

Judgment reversed.