### HENDERSON & REID v. STURGIS and others.

Where a sub-contractor is prevented from performing the whole of his contract with the contractor by reason of the failure of the latter, and an assignment by him of the contract for the benefit of his creditors; *Held*,—that he may acquire and enforce a lien for the value of his labor and materials performed and furnished up to the time when he was prevented.

Although at the time the sub-contractor filed his lien there was nothing due to the contractor, yet the latter having made an assignment with the consent of the owner, who detained from the contract price the amount of the lien, and the sub-contractor having, under an agreement with the assignee, completed his work, as contemplated by the original contract,—*Held*, that the equities are with the sub-contractor, and a court of equity will apply the sum so detained in satisfaction of his lien.

Henderson v. Sturgis.

APPEAL by the plaintiffs from a judgment of a District Court.

The action was brought to enforce a lien filed under the Mechanic's lien law. The facts are fully stated in the opinion of the Court.

BY THE COURT.—BRADY, J.—The plaintiffs, on the 18th of June, 1860, made an agreement with the defendants, Westervelt & Camp, who were the contractors, to perform certain work towards the erection of two houses belonging to the defendant Sturgis. On or about the 2nd of October, 1861, Westervelt & Camp failed and made an assignment. On the 5th of October, 1861, the plaintiffs filed a lien claiming one hundred dollars to be due, this being a part only of their contract price, which was two hundred and fifty dollars. The assignee of Westervelt & Camp, as such, finished the buildings under the original contract, but the plaintiffs made an agreement with him to complete their work, which was finished as contemplated by their agreement with Westervelt & Camp. At the time the lien was filed there was nothing due to the contractors, but the defendant Sturgis consented to the assignment and retained ultimately the sum of one hundred dollars as security against the lien. Can the plaintiffs recover on these facts? The Justice thought not, and dismissed their complaint. He was in error. The statute of 1851 provides for a lien to be gained by filing a notice, etc., after the performance of the labor or the furnishing of the materials (per Woodruff, J., in *Jacques* v. *Morris*, 2 E. D. Smith, 643,) but the plaintiffs were prevented from performing their contract with Westervelt & Camp by the failure of the latter.

The contract between them being an entirety, and the work not having been done, no lien could have been acquired on the 5th of October, 1861, unless the contract had ceased to continue by some act of the parties or by operation of law. The effect of the failure of the contractors and assignment by them was to prevent the plaintiffs from proceeding with their work, and the contract was at an end. (See *Belshaw* v. *Colie*, 1 E. D. Smith, 213.) And in this respect this case is analogous to *Dennistoun* v. *McAllister*, (4 E. D. Smith, 729,) in which the plaintiff recovered against the owner the amount of his claim,

22

although it was proved that he had not performed his work, such performance having been prevented by the contractor.

The foreclosure of a lien contemplated by the statute is an equitable proceeding, in which the powers of the Court as a Court of equity are peculiarly evoked to mould the remedy to suit the circumstance of each case. (*Doughty* v. *Devlin*, 1 E. D. Smith, 625 ; *Miller* v. *Moore*, Ibid, 739.) In this action the equities are with the plaintiffs. They performed work to the amount of one hundred dollars, and finished their contract by agreement with the assignee of the contractors, Westervelt & Camp. The assignee succeeded to the estate of the contractors, but took it *cum onere*, and having completed the work under the original contract, and the owner having detained the amount of the plaintiffs' claim from the contract price which he was to pay, equity demands that it should be applied to the payment of the plaintiffs' claim If the plaintiffs were not *rectus in curia*, this would not follow, and if there was no validity in the lien they would not be.

For the reasons assigned, I think the lien was valid when filed. The objections to the form of the lien were not well taken (*Lutz* v. *Ey*, 3 E. D. Smith, 621.)

The judgment should be reversed.