---

### In re CHRISTIE MANUF'G CO.

(Supreme Court, Special Term, New York County. January, 1896.)

MECHANIC'S LIEN—RECEIVER FOR CONTRACTOR—RIGHTS OF SUBCONTRACTORS.

Laws 1885, c. 342, § 1, as amended by Laws 1888, c. 316, having given subcontractors the right to obtain and enforce mechanics' liens against the property for work done thereon or materials furnished, such right is not affected by the appointment of a receiver for an insolvent principal contractor before completion of the subcontracts, and the receiver will be required to pay in full the claims of subcontractors who have acquired liens to the extent of the amount receivable by him on the contract from the owner of the property.

Petition of Nicholas F. Palmer as a building subcontractor under the Christie Manufacturing Company for an order on the receiver of that company requiring him to pay the amount due the petitioner on his subcontract in full. Granted conditionally.

Theall & Beam, for petitioner.

Everett V. Abbot, for receiver.

BEEKMAN, J. The Christie Manufacturing Company is a domestic corporation, and has instituted the above-entitled proceeding for its dissolution on the ground of insolvency. A temporary receiver was appointed on the 12th day of November, 1895, and a petition is now presented to the court on behalf of a creditor to com-

pel the payment of the amount of his debt, which has accrued under the following circumstances: Some time prior to the institution of this proceeding, the corporation above named entered into an agreement with the New York Produce Exchange for the performance of certain work and the furnishing of the necessary materials therefor upon the building owned by said exchange. In the course of the performance of its contract the Christie Manufacturing Company made an agreement with Nicholas F. Palmer, the petitioner, for doing a certain portion of the work, which was accordingly entered upon by him, and completed on the 13th day of November, 1895, the day after the appointment of the receiver; and thereupon the sum of $262.78, the value of the work, became due and owing to him from the company. On November 15th,—three days after the appointment of the receiver,—Mr. Palmer filed in the office of the clerk of the city and county of New York a notice of lien under the mechanic's lien law, for the purpose of charging the property of the produce exchange, upon which the work was done, with the payment of his claim. It further appears from the papers that the insolvent corporation had so far performed its contract with the exchange that on said 15th day of November, 1895, it became entitled to receive from the exchange a sum in excess of the amount of the Palmer claim. None of the facts above stated are disputed by the receiver, nor is any question raised by him in respect to the merit of the petitioner's claim. The sole question which is submitted to me on this motion for my determination is whether, in view of the fact that the petitioner's claim matured and his lien was filed after the appointment of the receiver, he has acquired any preference for the payment of the same over the other creditors of the corporation. Nor is any question made in respect to the form of the application, both parties expressing their desire upon the argument of the motion to have the court decide the question of law involved. The property against which the mechanic's lien has been filed did not belong to the insolvent corporation, but to the produce exchange, with whom it had contracted for the performance of certain work. The lien which was filed by Mr. Palmer consequently attached to the property in question; and we must look to the statute which authorized the lien in order to ascertain the extent of the owner's liability under such circumstances. This we find in section 1, c. 342, Laws 1885, as amended by chapter 316, Laws 1888. It is there declared that:

"Any person * * * who shall hereafter perform any labor or services or furnish any materials which have been used or which are to be used in * * * altering or repairing any * * * building with the consent of the owner, as hereinafter defined, or his agent, or any contractor or subcontractor, or any other person contracting with such owner to alter, repair, * * * as aforesaid, within any of the cities or counties of this state, may, upon filing the notice of lien prescribed in the fourth section of this act, have a lien for the principal and interest of the price and value of such labor and material upon such * * * building, and upon the lot, premises, parcel or farm of land upon which the same may stand, * * * to the extent of the right, title and interest at that time existing of such owner. * * * But in no case shall such owner be liable to pay, by reason of all the liens filed pursuant to this act, a greater sum than the price stipulated and agreed to be paid in such contract, and remaining unpaid at the time of filing such lien,

or, in case there is no contract, then the amount of the value of such labor and material then remaining unpaid, except as hereinafter provided."

It will thus be noticed that under this statute the owner of the property, upon the filing of a lien by a subcontractor, becomes responsible for the payment of the claim, although there is no privity of contract between him and the claimant, with the single limitation that such liability shall not extend beyond the amount then due from him to the person with whom he has directly contracted. Of course, this necessarily involves the right of the owner, upon paying any such lien, to charge his contractor with the amount thereof, and to deduct it from the contract price, as a payment made on account thereof. It is also plain that the right of the owner to such a credit cannot be defeated by any transfer of the debt either made by the principal contractor or effected by operation of law in proceedings instituted against him. If a foreclosure of the lien should be instituted, on what theory could the owner successfully defend on the ground that the corporation which contracted with him for the performance of the work had passed into the hands of a receiver? Does he not still owe the same amount of money on the same contract, and has not the statute thereupon subjected his property to the lien of the subcontractor pro tanto? He could, of course, show, if it were the fact, that the subcontractor had been paid, or that he had no claim against the principal contractor; but no such case as this is presented here. The debt is still due to the subcontractor. It is the means of payment on the part of the principal contractor which is wanting, and this certainly is no defense.

The strength of the petitioner's case rests upon the fact that he has a claim for the payment of his lien upon the owner of the property, whose right in turn it is to reimburse himself by charging the amount of the same against the sum due from him to the insolvent corporation. The conflict of interest, therefore, in respect to the other creditors of the insolvent corporation is between them and the owner, not between them and the petitioning creditor; and it is plain that in this conflict the right of the owner to credit himself with the full amount paid in discharging the lien is absolute, and superior to the equities of the general creditors. A clear conception of this fact, it seems to me, frees the question from all doubt, and makes it one easy of solution. The distinction between this case and one in which a similar lien might be asserted in respect to property which belonged to the insolvent corporation, but which had passed as such into the hands of a receiver before the lien was filed, is apparent. There the rule which requires an equal distribution of the assets among all the creditors has a necessary and equitable application, to which there is no apparent exception other than the case of general assignment specified in section 5 of the mechanic's lien law (Laws 1885, c. 342). But the case under consideration is entirely different. The lien here is being asserted, not against the property of an insolvent in the hands of a receiver, but against the property of another with whom the insolvent had contracted. The liability to be enforced by the petitioner is that of the owner, and, while the enforcement of the lien as against it, in its effect, will be equivalent to a payment by the

receiver to the petitioning creditor of the full amount of his claim, it is indirectly the result of a right which the owner has and is entitled to enforce as against the insolvent corporation and the receiver of its assets. There is no justice or equity in subjecting the claimant to loss because of the consequences flowing from the operation of the statute by reason of the enforcement of his right. Nor will the court be astute to work out an equity in favor of the receiver which shall defeat the beneficent intent of an act which (section 25) is declared to be a remedial statute, to be construed liberally, in order to secure the beneficial intent and purpose thereof.

Having thus come to the conclusion that the petitioning creditor will be entitled in a proceeding to foreclose his lien to full payment, it becomes a question as to the form of order which may be taken upon this motion. I am not willing to make a simple order directing the receiver to pay the petitioner's claim. I am willing, however, to grant an order which shall provide that upon the receipt by the receiver from the produce exchange of a sum of money which shall be sufficient to discharge the lien, and upon a satisfaction of the lien, duly executed, being tendered to the produce exchange, the amount due and payable upon the lien shall be forthwith paid by the receiver to the petitioner. To that extent the motion is granted.